### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT EMILE PETERSON,** | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )**CIVIL ACTION NO. 1:23-00452-TFM-N** |
| | ) |
| **ATTORNEY GENERAL OF** | ) |
| **ALABAMA, *et al.*,** | ) |
| **Defendants.** | ) |

### <u>REPORT AND RECOMMENDATION</u>

Plaintiff Robert Emile Peterson, at all times thus far proceeding without counsel (*pro se*), commenced this civil action by filing a complaint with the Court on November 30, 2023. *See* (Doc. 1); Fed. R. Civ. P. 3. On December 22, 2023, Defendants the Attorney General of Alabama and the Department of Public Safety ("DPS") (identifying itself as the Alabama Law Enforcement Agency) filed and served a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 6). On December 29, 2023, Defendant the Mobile County Sheriff's Department ("the Sheriff's Department") also filed a motion to dismiss the complaint under Rule 12(b)(6) (Doc. 8). The assigned District Judge has referred said motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (12/26/2023 & 12/29/2023 electronic reference notations); (Doc. 3).

Peterson filed no response to either motion by the January 12, 2024 deadline set by the Court. (*See* Docs. 7, 9).[1] The motions to dismiss are now under submission and ripe for disposition.

## I.    *Legal Standards*

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, generally "the 'scope of the review must be limited to the four corners of the complaint.' " *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The Court must "accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Duty Free Ams., Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1262 (11th Cir. 2015). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

> "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

---

[1] Peterson submitted a filing with the Court on January 2, 2024. (Doc. 10). However, as noted in a January 5, 2024 text-only order, that filing was "duplicative of the initial complaint and exhibits, except that [Peterson] has added a signature block to every page." (Doc. 11). The Court stated that the filing was "not construed as an amendment under Fed. R. Civ. P. 15(a)(1)(B)[,]" and that "[a]ll pending deadlines remain unchanged." (*Id.*). Three days later, Peterson filed a document that was duplicative of his January 2, 2024 filing. (Doc. 12). On May 2, 2024—almost four months after the deadline for his responses to the present motions—Peterson filed a motion to "continue" the case until the United States Supreme Court issued a decision regarding *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). (Doc. 13). The Court deems none of the foregoing to be a proper and timely response to either of the present motions.

> In other words, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018).

As the United States Supreme Court has explained, "[u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' … [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 677-78 (citations and some quotations omitted). *See also Duty Free*, 797 F.3d at 1262 (Courts " 'afford no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action.' " (quoting *Franklin v. Curry*, 738 F.3d 1246, 1248 n. 1 (11th Cir. 2013) (per curiam))).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotation marks omitted). Put another way, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is

entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, [courts] usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. --, 140 S. Ct. 1009, 1014, 206 L. Ed. 2d 356 (2020).

Moreover, " 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.' " *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Supreme Court has "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Importantly, … courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 679 (quoting *Twombly,* 550 U.S. at 567)).

> Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact,

irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (per curiam) (citation and quotations omitted). Here, the Rule 12(b)(1) motion is a "facial attack" on the complaint, as it does not rely on matters outside of the complaint. Therefore, Peterson is "afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Id.* at 1529.

Courts "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers[,]" and "[a]ccordingly … construe [*pro se*] pleadings liberally. Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (citations and quotation omitted).

## II. *Allegations & Claims in the Complaint*

Peterson, then represented by counsel, pleaded guilty in this Court to one count of knowingly receiving or distributing child pornography in violation of 18 U.S.C. § 2252(a)(2), and on September 10, 1986, was sentenced to three years of imprisonment and a $50 special assessment. (Doc. 1, "Exhibit A," PageID.7. *See also* Doc. 1, PageID.3).[2] Peterson alleges that, as a result of that conviction, he has recently been

---

[2] Per state court records attached to the Alabama Attorney General and DPS's motion to dismiss (Doc. 6-1)—the authenticity of which Peterson has not disputed—Peterson also pleaded guilty to one count of possession of child pornography in Alabama state court based on some of the same underlying conduct, and on September 12, 1986, was sentenced to five years of imprisonment, to run concurrent with the federal sentence. *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.").

forced to comply with the Alabama Sex Offender Registration and Community Notification Act (ASORCNA), Ala. Code § 15-20A-1, *et seq.*

> ASORCNA requires adult sex offenders, individuals who were age 18 or older when they committed a crime defined under Alabama law as a sex offense, to register with law enforcement. Ala. Code §§ 15-20A-4(1), 15-20A-10. Adult sex offenders are subject to ASORCNA for life. *Id.* § 15-20A-3(b). The Act went into effect on July 1, 2011, 2011 Ala. Laws 640 § 52, but its provisions apply to persons convicted prior to this effective date. *See* Ala. Code § 15-20A-3(a) (explaining that ASORCNA applies to all "adult sex offender[s] ... without regard to when his or her crime or crimes were committed or his or her duty to register arose"). Thus, it has retroactive application for those persons.
>
> ASORCNA requires registrants to report in person to law enforcement on a quarterly basis. *Id.* § 15-20A-10(f). A registrant…who lives in a city has a dual reporting requirement, meaning he must register each quarter both with his county sheriff and with his municipality's chief of police. *See id.* §§ 15-20A-4(12), 15-20A-10(f). Each time a registrant reports he must provide, among other things, information about where he is living, working, or attending school. *Id.* § 15-20A-7(a). He also must notify law enforcement when his registration information changes. *Id.* § 15-20A-10(e)(1). A person who knowingly fails to register or otherwise knowingly violates the reporting requirement may be imprisoned for up to 10 years. Id. §§ 13A-5-6(a)(3), 15-20A-7(f), 15-20A-10(j).

*McGuire v. Marshall*, 50 F.4th 986, 994-95 (11th Cir. 2022) (per curiam) (footnotes omitted).

Peterson apparently did not register under ASORCNA until 2021. As he alleges, on January 11 of that year, Peterson returned home to Mobile, Alabama, after being out of state for a week, and was met by two "sex offender detectives," one with the Sheriff's Department and the other with the Mobile Police Department. (Doc. 1, "Exhibit B," PageID.11). Peterson "was told that a person had turned [him] in to be investigated[,] and "was given a paper and told to report to their separate offices

Monday morning to register as a sexual offender." (*Id.*). Peterson "was in disbelief"
but "complied and on January 14, 2024...was made to register as a sexual offender."
(*Id.*). Peterson was later arrested by the Sheriff's Department when he reported in
May 2021 "for not coming in some two weeks after [his] initial registration." (*Id.*). He
is required to pay $10 each time he registers with the Sheriff's Department and the
Mobile police. (*Id.*). Peterson's ability to travel is greatly restricted, he has had
difficulty obtaining permission to travel from the Sheriff's Department, and he can
no longer attend events with his grandchildren. (*Id.*, PageID.9-11).

In his present complaint, Peterson alleges causes of action under 42 U.S.C. §
1983[3] claiming that ASORCNA's registration requirement is "a violation of his
constitutional rights," and requests that the Court "issu[e] an injunction prohibiting
Alabama from requiring [him] to register by ordering them to remove him from any
sex offender registry database and restore his Civil and Constitutional Rights..." He
also claims that the Defendants are improperly applying ASORCNA to him because
his federal conviction is not a qualifying crime under that law, and that regardless he
is entitled to relief from ASORCNA under Code of Alabama § 15-20A-25(f) because
he can show "by clear and convincing evidence that [he] does not pose a substantial
risk of perpetrating any future sex offense."

---

[3] "Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress..."

### III.   *Analysis*

#### a. <u>Sheriff's Department</u>

The Sheriff's Department asserts that Peterson's claims against it are due to be dismissed because it "is not a legal entity subject to being sued." (Doc. 8, PageID.87). The undersigned agrees.

For suits brought in federal district courts, "[c]apacity to sue or be sued is determined…by the law of the state where the court is located[,]" subject to inapplicable exceptions. Fed. R. Civ. P. 17(b). "Sheriff's departments and police departments are not usually considered legal entities subject to suit, [and u]nder Alabama law, a county sheriff's department lacks the capacity to be sued." *Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992) (citing *White v. Birchfield*, 582 So. 2d 1085, 1087 (Ala. 1991)). *See also, e.g.*, *Hare v. Mack*, 359 So. 3d 253, 256 n.2 (Ala. 2022) ("A 'sheriff's office' or 'sheriff's department' is not a legal entity subject to suit." (citing *King v. Colbert Cnty.*, 620 So. 2d 623, 626 (Ala. 1993), and *White*, 582 So. 2d at 1087)). Accordingly, the Sheriff's Department's Rule 12(b)(6) motion is due to be granted on this basis.

#### b. <u>Eleventh Amendment Immunity</u>

The Alabama Attorney General and DPS argue that they are entitled to immunity under the Eleventh Amendment to the United States Constitution (sometimes referred to as "sovereign immunity") on most of Peterson's claims, which are therefore due to be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. The undersigned agrees.

"Eleventh Amendment immunity is in the nature of a jurisdictional bar[,]" *Bouchard Transp. Co. v. Fla. Dep't of Env't Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996) (per curiam) (citing *Edelman v. Jordan*, 415 U.S. 651, 677-78, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)), "render[ing] States immune from certain suits in federal court." *Dupree v. Owens*, 92 F.4th 999, 1005 (11th Cir. 2024). "While the text of the Eleventh Amendment 'applies only to suits against a State by citizens of another State,' the Supreme Court has construed the Eleventh Amendment to apply to suits initiated by citizens against their own States. *Id.* (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001)). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Garrett*, 531 U.S. at 363. " 'This bar exists whether the relief sought is legal or equitable.' " *Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016) (per curiam) (quoting *Papasan v. Allain*, 478 U.S. 265, 276, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

"The courts have recognized two exceptions to eleventh amendment immunity. First, Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment. Second, a state may waive its immunity expressly through legislative enactment." *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citation omitted). Neither exception applies here. "Congress has not abrogated Eleventh Amendment immunity in § 1983 cases[,]" *Nichols*, 815 F.3d at 731 (11th Cir. 2016) (per curiam) (citing *Carr,* 916 F.2d at 1525), and the State of Alabama has

not agreed to be sued for violations of an individual's civil rights. *Id.* (citing Ala. Const. art. I, § 15 ("[T]he State of Alabama shall never be made defendant in any court of law or equity."), and *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978) (per curiam) (citing Ala. Const. art. I, § 14, now codified as § 15)).

"The Eleventh Amendment applies when 'the State or one of its agencies or departments is named as the defendant....' " *Id.* at 731 (quoting *Papasan*, 478 U.S. at 276 (quotation marks omitted)). "That is, Eleventh Amendment immunity 'is available "only" to states and arms of the states.' " *Id.* (quoting *Walker v. Jefferson Cty. Bd. of Educ.*, 771 F.3d 748, 751 (11th Cir. 2014)). Additionally, "[t]he Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest. Thus, the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter. And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (citations, quotations, and footnote omitted).

"Under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), however, there is a long and well-recognized exception to th[e] rule for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). Thus, "[t]he Eleventh Amendment generally does not bar the

exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law." *Id.* (citing *Ex parte Young,* 209 U.S. at 158-59). Importantly, though, "the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Id.* at 1337 (citations omitted). Moreover, "the Supreme Court in <u>Pennhurst</u> recognized an exception to <u>Ex parte Young</u> that prohibits a plaintiff from seeking injunctive relief when he alleges merely 'that a state official has violated <u>state</u> law.' " *Nat'l Ass'n of the Deaf v. Fla.*, 980 F.3d 763, 774 (11th Cir. 2020) (quoting *Pennhurst*, 465 U.S. at 106). This is true even when a plaintiff claims violations of both federal and state law in the same suit. *See Waldman v. Conway*, 871 F.3d 1283, 1290 (11th Cir. 2017) (per curiam) ("[T]o the extent that Waldman challenges A[labama Department of Corrections] officials' application of the [ASORCNA] notice requirements in the ADOC classification manual, his claim is barred by the Eleventh Amendment. Such a challenge is not a procedural due process challenge—it is a claim that state officials violated state law in carrying out their official responsibilities. Claims of that nature are barred by the Eleventh Amendment, even when, as here, they are brought into federal court as pendent claims coupled with suits raising federal questions." (citing *Pennhurst*, 465 U.S. at 120-21)). Finally, it bears emphasizing that *Ex parte Young* only applies to prospective relief against state <u>officials</u>. "State <u>agencies</u>…are never subject to unconsented suit, even under the doctrine of *Ex parte Young. Ex parte Young*…does not permit suit against state agencies or the state itself, even when the relief is

prospective." *Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006) (per curiam) (unpublished)[4] (emphasis added) (citing *Pennhurst*, 465 U.S. at 100-03, and *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981)[5] ("[N]either the state nor its agencies may be sued for injunctive relief in federal court, although injunctive or prospective relief may be sought against state officials without invoking the eleventh amendment bar.")).

In light of the foregoing, DPS, as a department and "arm" of the State of Alabama,[6] is clearly entitled to Eleventh Amendment immunity on all of Peterson's

---

[4] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). Alabama, Florida, and Georgia became the Eleventh Circuit, *see* 28 U.S.C. § 41, which, "in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

[6]    In determining whether an agency is an "arm of the State," courts in this circuit weigh the following four factors: " '(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.' " *Pellitteri v. Prine*, 776 F.3d 777, 779 (11th Cir. 2015) (quoting *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc)). "Whether a defendant was acting as an 'arm of the State' must be 'assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise.' " *Id.* (quoting *Manders*, 338 F.3d at 1308).
    DPS is part of the Alabama State Law Enforcement Agency (ASLEA), along with the State Bureau of Investigations. *See* Ala. Code § 41-27-1. The ASLEA is part of "the Executive Branch of [Alabama] State Government[,]" with the purpose "to coordinate public safety in th[e] state." *Id.* It is headed by a secretary who is appointed

claims. And the Alabama Attorney General, as a state official, is also clearly entitled to such immunity, except as to Peterson's claims for prospective injunctive relief based on alleged violations of federal law.[7] Accordingly, all claims on which these Defendants are due sovereign immunity are due to be dismissed without prejudice,[8] leaving only Peterson's § 1983 claims against the Alabama Attorney General seeking prospective injunctive relief. [9]

---

by and serves at the pleasure of the Alabama governor, and the secretary also serves as "the appointing authority and department head" for each of the two component departments. *See id.* §§ 41-27-2(a), (b)(1). The ALSEA is funded primarily by a Public Safety Fund, which is part of the state treasury and consists of "all monies appropriated" for ASLEA functions. *See id.* § 41-27-4. Considering the foregoing, DPS is clearly an "arm of the State" of Alabama sharing its Eleventh Amendment immunity.

In light of this determination, the undersigned need not address DPS's alternative argument that it is not responsible for enforcing ASORCNA's registration and notification requirements, and that Peterson therefore lacks standing to sue it because his injuries are neither traceable to nor redressable by DPS. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (quotation omitted)).

[7] As such, the Court will not—indeed, cannot—decide whether the Defendants are properly applying ASORCNA to Peterson, or whether he is entitled to be relieved of ASORCNA's requirements under Code of Alabama § 15-20A-25(f). Those are issues of state law that the Eleventh Amendment clearly bars this Court from deciding, even for purposes of prospective relief.

[8] *See Dupree*, 92 F.4th at 1008 ("Because the dismissals were based on sovereign immunity grounds, the jurisdictional nature of the dismissal requires it to be entered without prejudice. Under the Federal Rules of Civil Procedure, a dismissal for lack of jurisdiction operates as a dismissal without prejudice if the order does not indicate otherwise. Fed. R. Civ. P. 41(b). However, even if a dismissal is presumptively without prejudice, it is a best practice for district courts to err on the side of clarity and indicate whether prejudice has attached.").

[9] The Sheriff's Department did not raise Eleventh Amendment immunity in its own motion to dismiss. *See McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d

### c. <u>Constitutional Claims</u>

Peterson alleges that ASORCNA " 'as applied' to [him] is unconstitutionally 'over-breadth' [sic] and deprives him of procedura [sic] Due Process, [and] Equal Protection…" (Doc. 1, PageID.3).[10] He also "argu[es] that he was <u>never</u> ordered nor

---

1252, 1257 (11th Cir. 2001) ("[U]nlike other jurisdictional bars, federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does."). The undersigned nevertheless notes "[i]t is well established in this Circuit that Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment." *Melton v. Abston*, 841 F.3d 1207, 1234 (11th Cir. 2016) (per curiam), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2 929 (2007).

Additionally, "[a] state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable; but a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, n. 10, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). Moreover, § 1983 does not provide a cause of action for violations of state law. *See Skinner v. City of Miami, Fla.*, 62 F.3d 344, 347–48 (11th Cir. 1995) ("Skinner has proven that he was assaulted—that, however, is a tort created by state law, and not necessarily a violation of a constitutional right. Skinner has failed to show a violation of any right secured by federal law either under the Constitution or a federal statute… [A]lthough Skinner was the victim of a state law tort, he has not shown a constitutional violation. Consequently, he is not entitled to relief under section 1983." (footnote omitted)). As such, DPS is not a "person" subject to suit under § 1983, nor is the Alabama Attorney General except to the extent Peterson seeks prospective injunctive relief for violations of federal law. Accordingly, even if DPS and the Alabama Attorney General were not entitled to Eleventh Amendment immunity on most of Peterson's § 1983 claims as noted above, those same claims would still be subject to dismissal because they are not asserted against "persons" subject to suit under § 1983.

[10] The complaint also alleges: "This action is brought under the First Amendment of the United States Constitution for a 'Redress of Grievances.' " (Doc. 1, PageID.3). The undersigned interprets that statement as Peterson simply asserting that he is exercising his First Amendment right "to petition the Government for a redress of grievances" by filing the present action, rather than asserting an additional constitutional claim.

required by his federal sentencing judge to register as a 'sex offender' upon release from federal prison. Therefore, he had no notice under the 6th Amendment of any registration requirements, nor was he given a chance to be heard." (Doc. 1, PageID.4). He further asks the court "to conclude that his prior sentence has become final as outlined in <u>United States v. Difrancisco</u>,…and can not 38 years later be re-opened[,]" (*id.*). which the undersigned interprets as invoking *United States v. DiFrancesco*, 449 U.S. 117, 10 S. Ct. 426, 66 L. Ed. 2d 328 (1980), a case that concerned the Double Jeopardy Clause of the Fifth Amendment.[11]  Finally, Peterson appears to challenge ASORCNA's application to him as an "ex post fact law[,]" since it "would allow someone released some 38 years prior would [sic] be sentenced to a lifetime registration" and other difficulties. (*See* Doc. 1, PageID.11).

The Defendants assert that none of Peterson's constitutional claims sufficiently state a claim upon which relief may be granted, and that they are thus due to be dismissed under Rule 12(b)(6). The undersigned agrees.

---

[11] Peterson also at times appears to challenge the validity of his federal conviction. However, "[w]hen 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,'…§ 1983 is not an available remedy." *Skinner v. Switzer*, 562 U.S. 521, 533, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)). To the extent Peterson wishes to raise such a challenge, he must do so through a petition for a writ of error coram nobis. *See United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002) (per curiam) ("A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255.").

### 1. Procedural Due Process

While Peterson's allegations showing how ASORCNA burdens his procedural due process rights are thin, his claim appears foreclosed by *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003), which rejected a procedural due process challenge to a similar Connecticut law.

> In *Connecticut Department of Public Safety v. Doe,* the petitioner-a purportedly non-dangerous sex offender-brought a § 1983 action challenging provisions of Connecticut's sex offender registry law, which required an offender to register and the Department of Public Safety to post a sex offender registry containing registrants' names, addresses, photographs, and descriptions on an Internet Website and make the registry available to the public. The petitioner claimed that posting this information without a hearing as to dangerousness or recidivism violated his right to procedural due process. The Court rejected the claim. It found that "the fact that respondent seeks to prove [in the hearing]-that he is not currently dangerous-is of no consequence under Connecticut's Megan's Law ... [T]he law's requirements turn on an offender's conviction alone-a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." 538 U.S. at 7, 123 S. Ct. 1160.

*United States v. Ambert*, 561 F.3d 1202, 1208 (11th Cir. 2009).

The Eleventh Circuit has since relied on *Connecticut Department of Public Safety* to reject a procedural due process challenge to the federal Sex Offender Registration and Notification Act (SORNA), *see id.*, and has indicated that case foreclosed such a challenge to Florida's sex-offender registration law, *see Doe v. Moore*, 410 F.3d 1337, 1342 (11th Cir. 2005). Peterson's complaint alleges nothing to distinguish his procedural due process challenge from the ones rejected in *Connecticut Department of Public*, *Ambert*, and *Doe*.

As such, Peterson's § 1983 claims for relief based on procedural due process violations are due to be dismissed under Rule 12(b)(6).[12]

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 561, 64 L. Ed. 989 (1920).

As a general rule, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland,* 366 U.S. 420, 425–426, 81 S. Ct. 1101, 1105, 6 L. Ed. 2d 393 (1961). Accordingly,...unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest. See, *e.g., Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439–441, 105 S. Ct. 3249, 3254–3255, 87 L. Ed. 2d 313 (1985); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 2517, 49 L. Ed. 2d 511 (1976).

*Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992)

"Group classification by legislative act will be analyzed under a strict scrutiny if the classification infringes fundamental rights or concerns a suspect class...If not, we review the constitutionality of the classification under a rational basis test" *Doe*

---

[12] While Peterson has not expressly alleged a substantive due process challenge to ASORCNA, the undersigned notes that the Eleventh Circuit has rejected such challenges SORNA and to Florida's registration law. *See Doe*, 410 F.3d at 1343-46; *Ambert*, 561 F.3d at 1208-09.

*v. Moore*, 410 F.3d 1337, 1346 (11th Cir. 2005) (citing *Cleburne*, 473 U.S. at 440, 442).

"A statute is considered constitutional under the rational basis test when 'there is

any reasonably conceivable state of facts that could provide a rational basis for' it."

*Id.* (quoting *FCC v. Beach Communications*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124

L. Ed. 2d 211 (1993)). " 'Almost every statute subject to the very deferential rational

basis ... standard is found to be constitutional.' " *Id.* at 1346-47 (quoting *Williams v.

Pryor*, 240 F.3d 944, 948 (11th Cir. 2001)).

In analyzing a similar equal protection challenge to Florida's sex-offender

registration law, the Eleventh Circuit determined that no fundamental rights were

at stake or unduly burdened,[13] and that "sex offenders are not considered a suspect

class in general…" *Id.* at 1344-46. Finally, it held that Florida's registration law "is

rationally related to the state's interest in protecting its citizens from criminal

activity." *Id.* at 1347. The Eleventh Circuit has subsequently relied on *Doe*'s

reasoning in finding that a plaintiff had failed to "state a rational-basis equal

protection claim" against ASORCNA, "especially given ASORCNA's expressly

---

[13] In *Doe*, the plaintiffs attempted "to make broad claims that the Sex Offender Act
infringes their liberty and privacy interests, particularly …. their 'rights to family
association, to be free of threats to their persons and members of their immediate
families, to be free of interference with their religious practices, to find and/or keep
any housing, and to a fundamental right to find and/or keep any employment.' " *Id.*
at 1343. The court, however, cautioned that it "must endeavor to create a more careful
description of the asserted right in order to analyze its importance." *Id.* Using the
Florida law "itself to define the scope of the claimed fundamental right[,]" along with
the parties' briefs, the court determined the right at issue "is the right of a person,
convicted of 'sexual offenses,' to refuse subsequent registration of his or her personal
information with Florida law enforcement and prevent publication of this information
on Florida" Sexual Offender/Predator website." *Id.* at 1344.

incorporated legislative findings articulating several reasonable bases for enacting the law, *see* Ala. Code § 15–20A–2(1)–(5)." *Windwalker v. Governor of Alabama*, 579 F. App'x 769, 774 (11th Cir. 2014) (per curiam) (unpublished).

Peterson's complaint fails to expressly allege what "fundamental right(s)" he believes ASORCNA burdens, and his allegations suggest this case only implicates the same rights not found to be "fundamental" in *Doe*. And other than sex offenders, Peterson fails to identify some other group to which he belongs that he believes should be considered a "suspect class." Therefore, Peterson has failed to show that ASORCNA is subject to any review higher than rational-basis, and nothing in his complaint plausibly suggests that ASORCNA could not survive such deferential review, particularly given *Windwalker*'s prior finding that it does.

As such, Peterson's § 1983 claims for relief based on equal protection violations are due to be dismissed under Rule 12(b)(6).

### 3.  Ex Post Facto

The United States Constitution provides that "[n]o State shall…pass any…ex post facto Law…" U.S. Const. art. I, § 10, cl. 1. "The *Ex Post Facto* Clause prohibits retroactive punishment; that is, it 'forbids the application of any new punitive measure to a crime already consummated.' " *McGuire*, 50 F.4th at 1001 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 370, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997) (internal quotation marks omitted)). "Because the *Ex Post Facto* Clause prohibits the retroactive application only of laws imposing punishment, a statutory scheme that is civil and regulatory in nature rather than criminal may apply retroactively without

violating the Constitution." *Id.* "To show entitlement to relief under the *Ex Post Facto* Clause, [a plaintiff] must establish that the challenged provisions…are criminal in nature. To determine whether a law is criminal in nature, [courts] apply a two-part 'intent-effects' test." *Id.* (citing *Smith v. Doe*, 538 U.S. 84, 92, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003)). At the first step of this analysis, a court must "ask 'whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for [a civil or criminal] label.' " *Id.* (quoting *Smith*, 538 U.S. at 93). If the answer at the first step is civil, "[i]n the second step of the inquiry, we 'examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil.' " *Id.* at 1002 (quoting *Smith*, 538 U.S. at 92).

The Eleventh Circuit has already definitively answered the first step as to ASORCNA, holding that "the Alabama legislature intended ASORCNA to be civil and regulatory rather than punitive…" *Id.* at 1007. And at the second step, "a plaintiff has a heavy burden when seeking to override a legislative expression of intent that a challenged provision is civil, and only the clearest proof will suffice to meet that burden." *Id.* at 1005. Peterson's present complaint fails to even plausibly suggest that he could meet that burden. The complaint expressly states that Peterson is bringing an "as-applied" challenge to ASORCNA, and his allegations only concern ASORCNA's effects on him. *See id.* at 1003 ("In an as-applied challenge, a plaintiff seeks to vindicate only her own constitutional rights. In evaluating an as-applied challenge, a court addresses whether a statute is unconstitutional on the facts of a particular case

or in its application to a particular party." (citation and quotations omitted)). The Eleventh Circuit, however, has held "that an *ex post facto* claim cannot be treated as an as-applied challenge[,]" and "a plaintiff cannot carry his heavy burden [at the second step] by demonstrating the law's effects only as to him." *Id.* at 1004-05.[14]

Accordingly, Peterson's § 1983 claims for relief based on violations of the Ex Post Facto Clause are due to be dismissed under Rule 12(b)(6).

### 4. Double Jeopardy

Among other things, the Double Jeopardy Clause of the Fifth Amendment protects against multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). Peterson appears to argue that retroactively subjecting him to ASORCNA long after his federal conviction became final and his sentence had been served constitutes a second punishment for that same offense. However, as noted previously, Peterson has failed to plausibly show that ASORCNA is punitive in nature. Thus, ASORCNA cannot constitute a punishment that triggers Double Jeopardy. *See United States v. Diaz*, 967 F.3d 107, 110-11 (2d Cir. 2020) (per curiam) (nonpunitive sex offender registration law does not support a double jeopardy claim); *Does 1-7 v. Abbott*, 945 F.3d 307, 314-15 (5th Cir. 2019) (per curiam) (same); *Am. C.L. Union of Nevada v. Masto*, 670 F.3d 1046, 1053 (9th Cir. 2012) (same); *E.B. v. Verniero*, 119 F.3d 1077, 1093-1105 (3d Cir. 1997) (same);

---

[14] *McGuire* held that ASORCNA's residency and employment restrictions, homeless-reporting requirement, travel notification requirement, and direct community notification requirement did not violate the Ex Post Facto Clause, finding that the plaintiff had failed to meet his "heavy" step-two burden on any of those portions of the law.

*Steward v. Folz*, 190 F. App'x 476, 479 (7th Cir. 2006) (per curiam) (unpublished) ("[W]hen a sex offender registry like Indiana's is enacted as a civil, non-punitive notification scheme, mandatory registration of convicted sex offenders does not constitute a criminal punishment in violation of the double jeopardy clause." (citing *Femedeer v. Haun*, 227 F.3d 1244, 1253-54 (10th Cir. 2000) (holding that that "Utah's scheme of public disclosure of sex offender information does not constitute criminal punishment under the Double Jeopardy Clause" and thus "presents no double jeopardy violation"))).

Accordingly, Peterson's § 1983 claims for relief based on violations of the Double Jeopardy Clause are due to be dismissed under Rule 12(b)(6).

### 5. Sixth Amendment

Peterson also alleges that ASORCNA violates his Sixth Amendment rights.[15] However, "[t]he Sixth Amendment applies only to criminal proceedings[,]" and not to proceedings that are "civil in nature." *Barbour v. Haley*, 471 F.3d 1222, 1231 (11th Cir. 2006). As noted previously, the Eleventh Circuit has found that the Alabama legislature intended ASORCNA to be civil in nature, *McGuire*, 50 F.4th at 1007, and Peterson has failed to plausibly show that he can carry his "heavy burden" to show

---

[15] The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

otherwise. Accordingly, Peterson's § 1983 claims for relief based on violations of the Sixth Amendment are due to be dismissed under Rule 12(b)(6).[16]

### 6. Overbreadth

"In the First Amendment context,…a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010). However, overbreadth is a facial challenge to a statute. *Id.* As noted previously, Peterson's complaint, both expressly and in substance only challenges the constitutionality of ASORCNA "as applied" to him, which "is not the stuff of overbreadth…" *United States v. Hansen*, 599 U.S. 762, 785, 143 S. Ct. 1932, 216 L. Ed. 2d 692 (2023).

Accordingly, Peterson's § 1983 claims for relief based on the overbreadth doctrine are due to be dismissed under Rule 12(b)(6).[17]

---

[16] Peterson's conclusory invocation of the "rule of lenity" is unavailing for the same reason, as that rule applies only to criminal statutes. *See United States v. Svete*, 556 F.3d 1157, 1169 (11th Cir. 2009) (en banc) (" '[T]he canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 1225, 137 L. Ed. 2d 432 (1997). The rule of lenity is applied when a broad construction of a criminal statute would 'criminalize a broad range of apparently innocent conduct.' *Liparota v. United States*, 471 U.S. 419, 426, 105 S. Ct. 2084, 2088, 85 L. Ed. 2d 434 (1985).").

[17] In light of the foregoing determinations, the undersigned declines to address the Defendants' additional arguments that the complaint is an impermissible "shotgun pleading," and that Peterson's § 1983 claims are barred by the applicable 2-year statute of limitations.

### d.  Leave to Amend

The general rule in this circuit for *pro se* plaintiffs is that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc) (overruling *Bank*'s one-chance-to-amend rule as to counseled parties)). However, "where the plaintiff has indicated that he does not wish to amend his complaint," or "if a more carefully drafted complaint could not state a claim[,]" then "the district court need not dismiss with leave to amend[,]" and "dismissal with prejudice is proper." *Id.*

The undersigned finds that a more carefully drafted complaint would still fail on all claims other than the § 1983 claims against the Alabama Attorney General seeking prospective equitable relief based on constitutional violations. The Sheriff's Office is clearly not a legal entity subject to suit; DPS is clearly an agency and "arm" of the State of Alabama entitled to Eleventh Amendment immunity on all claims; and the Alabama Attorney General, an Alabama state official, is also clearly entitled to Eleventh Amendment immunity except as noted.

With regard to the § 1983 claims against the Alabama Attorney General seeking prospective equitable relief based on constitutional violations, the undersigned concludes that, while unlikely, it is not outside the realm of possibility that Peterson could plausibly state a claim under at least one of the constitutional

provisions he invokes. Moreover, while Peterson failed to directly respond to the present motions to dismiss, the undersigned declines to find from this silence alone that Peterson would not want to amend his complaint to state his claims more clearly if given the chance, and the other filings Peterson has submitted since the motions to dismiss suggest a desire to continue litigating this action. Accordingly, the undersigned will recommend that Peterson be given an opportunity to amend his complaint to allege enough well-pleaded factual matter plausibly stating claims for relief on the § 1983 claims against the Alabama Attorney General seeking prospective equitable relief based on federal constitutional violations.

## IV.   *Conclusion*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that the present Rule 12(b) motions to dismiss (Docs. 6, 8) be **GRANTED** as follows:

1. all claims against the Sheriff's Department should be **DISMISSED with prejudice** under Rule 12(b)(6) because it is not a legal entity subject to suit, without leave to amend these claims;

2. all claims against DPS should be **DISMISSED without prejudice** under Rule 12(b)(1) because DPS is immune under the Eleventh Amendment, without leave to amend these claims;

3. all § 1983 claims against the Alabama Attorney General seeking prospective equitable relief based on federal constitutional violations should be **DISMISSED** under Rule 12(b)(6) for failure to plausibly state a claim upon which relief can be granted, **without prejudice** to Peterson's ability to file

and serve, by a set deadline, a first amended complaint that plausibly states a § 1983 claim(s) against the Alabama Attorney General for such relief; and

4. all other claims against the Alabama Attorney General not covered by the preceding paragraph should be **DISMISSED without prejudice** under Rule 12(b)(1) because the Attorney General is immune under the Eleventh Amendment, without leave to amend these claims.

<u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1*,* "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection

that merely incorporates by reference or refers to the briefing before the Magistrate

Judge is not specific.

      **DONE** this the **23rd** day of **August 2024**.

                       */s/ Katherine P. Nelson*
                       **KATHERINE P. NELSON**
                       **UNITED STATES MAGISTRATE JUDGE**